UNITED STATES DISTRICT COURT
DISTRICT OF OREGON - PORTLAND DIVISION

| | | |
|---|---|---|
| KRISTOFER EDWARDS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  3:13-CV-01362 |
| | ) | |
| TECHTRONIC INDUSTRIES NORTH | ) | |
| AMERICA, INC.,   ONE WORLD | ) | |
| TECHNOLOGIES, INC.    AND | ) | |
| RYOBI TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendants | ) | |

**PLAINTIFF'S MOTIONS IN LIMINE & MEMORANDUM
OF LAW IN SUPPORT**

**BACKGROUND FACTS[1]**

This is a personal injury lawsuit in which Plaintiff Kristofer Edwards seeks

compensation for permanent, disabling injuries he sustained while working with a table

saw designed, manufactured and sold by Defendants.  Plaintiff alleges that Defendants

and others were made aware in November 2000 at a meeting of the Power Tool Institute,

Inc. ("PTI"), of which Ryobi and One World are members, of technology that detects

when human flesh touches a saw blade, and once contact is detected, stops the saw blade

almost instantly.   The technology is known as "Sawstop."   At the time of the

demonstration, Dr. Stephen Gass, (referred to hereinafter as "Gass") the inventor of the

flesh detection and braking technology, offered to share the technology with Ryobi and

One World under a licensing agreement.  Ryobi and One World chose not to utilize this

---

[1] *These background facts are relevant to all of Plaintiff's Motions in Limine.  Facts specific to each Motion in
Limine are set forth within each Motion.*

technology and instead joined with other table saw manufacturers through the Power

Tool Institute ("PTI") to form a joint venture, ostensibly to develop their own flesh

detection and braking technology.   Defendants, however, continued to sell table saws

without this available technology and have refused to license the Sawstop technology.

To date, the only table saw on the market with flesh detection technology is the Sawstop

saw sold by Gass's company.   As one court has explained[2]:

> The jury heard evidence that Ryobi could have equipped its saw with two
> alternative safety features. . . .   The second additional safety feature is an
> automatic braking system, colorfully known as flesh detection technology.
> The automatic braking system prevents injury by stopping and retracting the
> blade at the moment the blade contacts flesh. The technology works by
> detecting the human body's electrical current. When an operator's flesh
> contacts the blade, the body's electrical current triggers the safety system,
> which applies a brake and retracts the blade beneath the cutting surface. The
> saw stops within a few milliseconds, fast enough in most cases to leave the
> operator with only a minor, superficial wound. . . . .

Gass developed the automatic braking system in 1999.   Gass patented the

technology and then attempted to license it to table saw manufacturers, including Ryobi.

Gass and Ryobi entered negotiations over a licensing agreement, but the negotiations

failed and Ryobi never licensed Gass's technology. Plaintiff maintains that Ryobi and

other manufacturers decided not to license Gass's technology for fear of product liability

exposure on saws that did not have the technology.

Plaintiff alleges in part that Defendants' table saw was defective and unreasonably

dangerous because it did not incorporate some type of flesh detection, or other injury

mitigation, technology, that was feasible at the time the subject saw was manufactured

---

[2] *Stollings v. Ryobi Techs., Inc.,* 725 F.3D 753, at  757, 758 U.S. App. Lexis 16055, 92 Fed. R. Evid. Serv. (CBC) 50
(7th Cir. Ill. 2013).

and sold.  Among Plaintiff's experts is Mr. Holt, who has opined that the subject saw was

unreasonably dangerous because it did not contain flesh detection or other injury

mitigation technology.

## PLAINTIFF'S MOTION IN LIMINE NO. 1
## <u>RELATING TO MONOPOLY ARGUMENTS</u>

Plaintiff moves the Court for an order precluding any monopoly-type argument at

trial that Plaintiff or his experts are seeking to deprive consumers of freedom of choice,

are trying to force them to pay for expensive safety technology, or are seeking to create a

monopoly for Steve Gass or SawStop.

Defendants intend to argue to the jury that Plaintiff and Gass are seeking to

deprive consumers of "freedom of choice" and "force" them to pay for expensive safety

technology through a monopoly.  Defendants in this case made this the theme of their

defense in the *Stollings* case (see footnote 1)  in their opening statement as follows:

> But Mr. Gass doesn't want competition. He wants a monopoly. He wants
> every table saw that is sold in this country to have his technology on it. He
> doesn't believe that you should be able to go to a Home Depot and buy a saw
> like this without his technology.

> That's really what's going on here. Part of a game plan to sue the
> manufacturers all across the country, have Mr. Carpinello coming after the
> manufacturer alleging to a jury that the product is defective and
> unreasonably dangerous, while Mr. Gass filed a petition with the CPSC that
> asked the CPSC to make his technology the standard in the industry, to give
> him a monopoly.

> So the joint venture that exists in this case is part of an overall strategy to
> force the manufacturers to pay Mr. Gass for his technology, as well as to
> have CPSC give him a monopoly so he has no competition . . . .

> Mr. Gass is very smart, very smart. He's a very good patent lawyer. He came
> up with a very good concept, and he should be able to go to the market and

sell it to the consumers that want to buy it. He doesn't need a monopoly. That's what this is about.

The cost of the saw, he's going to come out with a prototype which is probably going to cost about a thousand dollars and weigh -- it's going to weigh a lot more than this saw weighs, and he doesn't want you to have the choice when you go shopping at Home Depot.

The free market works best. We all don't have to buy the latest technology that Mercedes-Benz is offering. You want to buy a Volvo, you want to buy a Kia, you want to buy a Hyundai, you ought to be able to do that.

That's for the consumer to decide if you want to pay for that kind of a system rather than have it forced on you because of his strategy of trying to monopolize the marketplace.

If you want it, you can buy it; but don't force everybody to have to buy that system because they have no choice anymore. That's what he wants. He doesn't want you to have a choice.

(Chapman Decl., Ex. A at 51, 54-56, 58, 59.) They argued the same thing in closing

argument:

You should be able to have freedom of choice as a consumer. Some people don't want to use the guard? Then you should buy a SawStop product. If you're going to use the guard and you want to get a $200 product, you should be able to buy this.

Just like you buy a car. Some cars have different technology on them. You can buy a more reasonably-priced car. It may not have all the technology on it that a Mercedes does, but it's safe to use. It's safe to drive. Maybe you want a technology that parks itself or that has backup radar and TV cameras. You can buy that. But if you don't want to -- if you don't need that technology, should you be forced to pay for it?

And the PTI believes that the consumer should have the freedom of choice. If you want to buy SawStop, you should be able to buy it. If you don't want to buy SawStop, you should be able to buy a reasonably-priced product like this at Home Depot. That's your right.

(Chapman Decl., Ex. L at 2762-63, 2784.)  These arguments were totally improper, not relevant to the issues in dispute, were not supported by any evidence and their probative value, if any, was substantially outweighed by the danger of unfair prejudice.

**ARGUMENT AND AUTHORITIES**

**A.    The argument at issue is not relevant to any of the issues in dispute.**

Freedom of choice is not an available defense in this case.   Defendants are not permitted to escape liability for selling a defective product by arguing that making the product safe might deprive consumers of choice.  Defendants are also not permitted to escaped liability by arguing that holding them liable might create a monopoly.

**B.    There is no evidence that SawStop's patents threaten to create a monopoly.**

Assuming it would somehow be proper to inform the jury that a plaintiff's verdict could lead to a monopoly for SawStop, Defendants' argument is nonetheless improper because the evidence does not support it.   A SawStop monopoly would only be possible if any possible flesh detection or other injury mitigation technology would violate SawStop's patents.  As set forth in Plaintiff's Motion in Limine Number 2, Defendants have no evidence to support such an argument.   Moreover, Plaintiff has submitted evidence that Bosch, another Joint Venture participant plans to release its own flesh detection technology to the marketplace despite the SawStop patents.

**C.    The probative value, if any, of the evidence at issue is substantially outweighed by the danger of unfair prejudice.**

Even if the Court were to determine such evidence might have some relevance, the probative value would be substantially outweighed by the danger of unfair prejudice,

confusion of the issues, or misleading the jury. *See* FED. R. EVID. 403. This is the very

conclusion reached by the Seventh Circuit in *Stollings.* In that case, these same

Defendants "framed the case for the jury as a joint venture between Gass and Stollings's

attorneys--Mr. Carpinello and Mr. Sullivan--to coerce Ryobi and other saw

manufacturers to license and use Gass's automatic braking technology."[3] As a result of

this improper argument, the Seventh Circuit concluded that the plaintiff was prejudiced

and deprived of a fair trial.[4] Allowing Defendants to argue that Plaintiff or his experts

seek to create a monopoly would be extremely prejudicial and hold no probative value.

## CONCLUSION

For all of the reasons set forth above, the Court should enter an order precluding

any argument at trial that Plaintiff or his experts are seeking to deprive consumers of

freedom of choice, are trying to force them to pay for expensive safety technology, or are

seeking to create a monopoly for Steve Gass or SawStop.

### PLAINTIFF'S MOTION IN LIMINE NO. 2
### RELATING TO PATENT INFRINGEMENT ISSUES

Plaintiff moves the Court for an order precluding any reference at trial to any

opinion that the injury mitigation technology developed by the Joint Venture or by Ryobi

may infringe one or more patents held by Stephen Gass or SawStop.

At the recent trial in this case, Ryobi's counsel argued to the jury that the reason it

never released a flesh-detection-equipped saw was because it feared patent litigation by

Gass and SawStop:

---

[3] *Id* at 758.
[4] *Id* at 772.

The industry has been responding to Mr. Gass's strategy, trying to come up with their own technology, but they haven't put anything on the market because they're going to have to litigate with Mr. Gass in a patent infringement case. That's what this is all about.

(Chapman Decl., Ex. B at 56.)  This entire line of argument is specious.  Defendants have produced no admissible evidence that the technology developed by the Joint Venture or by Ryobi violates any of the Gass or Sawstop patents and have not designated any experts to opine on this subject.  For those reasons, set forth more fully below, Plaintiff seeks an order from the Court barring any argument or opinion that Defendants cannot market flesh detection or similar technology due to those patents.

**ARGUMENT AND AUTHORITIES**

**A.**   **Defendant has produced no admissible evidence that the technology developed by the Joint Venture or by Ryobi violates any of the Gass or SawStop patents.**

Defendants have produced no admissible evidence that the technology developed by the Joint Venture or by Ryobi violates any of the Gass or SawStop patents.  In fact, the PTI has stated that it has *no opinion* as to whether its technology infringes any of Gass's or SawStop's patents.  (*See* Chapman Decl., Ex. C.)  Defendants' own witnesses at previous trials have testified that they had no knowledge regarding this issue.  Wayne Hill is Defendants' Director of Product Safety.  (Chapman Decl., Ex. D at 123-24.)  At a previous table saw trial, he testified as follows:

> Q. Well, do you know it to be a fact, that Mr. Gass's patents are preventing Ryobi from implementing sensing technology? You know that as a fact?
>
> A. I'm not a patent attorney, so I don't know that as a fact.

Q. You don't -- you don't know anything about this – about whether the patent prevents the flesh-detection technology being implemented by Ryobi, correct?

A. Not personally, that's true.

(*Id.* at 213.)  David Peot was Defendant's Director of Engineering.  (Chapman Decl., Ex. E at 1719.)  At a previous table saw trial, he testified that:

Q.    Was there some concern prior to your retirement about patent infringement with respect to the joint venture's approach to this injury mitigation system and the SawStop system?

A. In terms of patents and when we started the sensing joint venture, the directions we gave to the D2M Corporation, the consulting firm that was working on it, was for all of their initial work, they were to disregard any patents or licensed technology, but to come up with the best possible solution to the problem.

And, of course, we knew that SawStop had a number of patents, and at some point, there was a possibility that the work we were doing could possibly be infringing on some of their patents, but we -- at the point I left, we never really studied that issue.

(*Id.* at 1820.)  Defendants offered no evidence at any of the previous table saw trials, and have produced no admissible evidence in this case, that the technology developed by the Joint Venture or by Ryobi violates any of the Gass or Sawstop patents.  Defendants should therefore be precluded form offering any opinions on this subject at trial.

**B.     To the extent Defendants' patent attorneys have concluded that the technology developed by the Joint Venture or by Ryobi violates any of the Gass or Sawstop patents, Defendants have refused to produce such information and have refused to allow their witnesses to testify on the subject.**

Defendants may attempt to offer hearsay testimony from its witnesses that their patent attorneys have concluded that the technology developed by the Joint Venture or by Ryobi violates the Gass and/or SawStop patents.   However, such testimony is

inadmissible for at least three reasons.   First, out-of-court statements made by

Defendants' patent attorneys are inadmissible hearsay.   Second, as set forth more fully

below, Defendant has not identified any of its patent attorneys, or anyone else, as a

qualified expert to opine on this issue.   Third, Defendants have never produced any

written infringement opinions from their patent attorneys.   And fourth, Defendants have

previously refused to allow their witnesses to testify on the subject.   For example, during

the deposition of Peter Domeny, an expert for Defendants in other cases, taken in the case

of *Gao v. Techtronic Industries, et. al.,* Defendants' attorneys repeatedly refused to allow

Domeny to testify to the opinions of their patent counsel:

> Q.      You've never been a part to a discussion within that group, your
> joint venture for flesh detection has never discussed whether for flesh
> detection has never discussed whether what you were developing would in
> any way infringe upon what Dr. Gass already had in existing patents.
> MS. KNOWLES: Objection, to the extent it would require you to disclose
> attorney-client privileged information.
> ***************
> Q.      But if you've talked with anyone other than patent attorneys, you
> can answer.
> A.      No. the opinions about the patents were done by Mr. Mark
> Knedeisen, who's an attorney for PTI JV project.
> ****************
> Q. Okay. Do you personally have any opinions as to what aspects of the
> joint venture technology potentially violate the SawStop patents? Is it the
> use of capacitances, the use of actuators? Is it the use of the dropping the
> blade below the table or any other aspect?
> MS. KNOWLES: Objection. And I remind you, don't disclose anything,
> any communications with attorneys.
> ****************
> Q.      So these lawyers didn't tell you about the patent litigation. But the
> patent attorneys told you about the fear of patent litigation, correct?
> MS. KNOWLES: I instruct you not to relay any information regarding the
> patent attorneys.

(Chapman Decl., Ex. F at 21, 22, 28, 148, 152, 170.)

In a deposition taken in the case of *Wielgus v. Ryobi Technologies, Inc., et. al.*
Defendants again refused to allow Domeny to testify on this topic:

> Q. Do you have an opinion as to whether the JV technology infringes on the
> SawStop patents?

> A.    Mr. Appel:   That's not – I'm absolutely not going to let him testify
> about that.

(Chapman Decl., Ex. G at 207.)   Defendants have refused to allow their witnesses to
testify regarding the infringement opinions of their patent attorneys.   They have not
produced any written infringement opinions.   And they have not identified their patent
attorneys or any other qualified expert to testify regarding whether or not the JV or Ryobi
technology may violate the SawStop patents.   For these reasons, Defendants should not
be permitted to offer any infringement opinions at trial.

**C.    Defendants have not identified any qualified expert witnesses to opine that
the technology developed by the Joint Venture or by Ryobi violates any of the
Gass or Sawstop patents.**

Defendants have not identified **any** qualified expert witnesses to opine that the
technology developed by the Joint Venture or by Ryobi violates any of the Gass or
Sawstop patents.   In fact, the only expert Ryobi identified in this case who mentions
patents is Peter Domeny, who mentions that Defendants fear patent litigation with Dr.
Gass.   (*See* Chapman Decl., Ex. H at 11).   But Domeny admits that he has no basis to
conclude that any of Ryobi's technology violates Gass's patents.   (*See* Chapman Decl.,
Ex. F at 16 ("I have not formed an informed opinion about the subject."), 169 ("I don't
have an opinion on that.  This – the opinion about the infringement is a legal opinion, and
I don't go there.  That's what the patent lawyers are for.").  And he has admitted that he is

not qualified to offer any such opinions.  (Chapman, Decl., Ex. F at 28 ("I don't have an informed opinion on that subject because I'm, not schooled in evaluating patents and patent infringement issues.").)  To the extent Domeny or any other Ryobi witness would purport to offer patent infringement opinions based on the opinions of Ryobi's patent counsel, as set forth above, Defendants have refused to produce such information and have refused to allow Domeny to testify about it in the past.  (*See* Chapman Decl., Ex. F at 21, 22, 28, 148, 152, 170.)

To the extent any Ryobi witness would purport to offer patent infringement opinions based on the opinions of Ryobi's patent counsel, as set forth above, Defendants have refused to produce such information and have refused to allow witnesses to testify about it in the past.  (*See* Chapman Decl., Ex. F at 21, 22, 28, 148, 152, 170.)

For these reasons Plaintiff moves the Court for an order precluding any reference at trial to any opinion that the injury mitigation technology developed by the Joint Venture or by Ryobi may infringe one or more patents held by Gass or Sawstop.

## CONCLUSION

For the reasons set forth above, Plaintiff moves the Court for an order precluding any reference at trial to any opinion that the injury mitigation technology developed by the Joint Venture or by Ryobi may infringe one or more patents held by Stephen Gass or Sawstop.

## PLAINTIFF'S MOTION IN LIMINE NO. 3 RELATING TO INEXPENSIVE TABLE SAW ARGUMENTS

Plaintiff moves the Court for an order precluding any argument at trial that Plaintiff's legal position and/or a verdict in Plaintiff's favor could lead to the elimination of inexpensive table saws from the marketplace.  As part of this motion, Plaintiff requests that the Court specifically preclude any argument at trial regarding the creation by consumers of dangerous improvised table saws due to the unavailability of inexpensive table saws.

Defendants have suggested that the assertion of product liability claims based on the lack of flesh detection and/or a verdict in favor of a plaintiff in such a case could lead to the elimination of inexpensive table saws from the marketplace. They have also suggested that the elimination of inexpensive table saws could lead to consumers creating their own "jerry rigged" saws. One of Defendants' experts is Peter Domeny.  He has opined in prior depositions in other cases that before Defendants and other tool companies sold inexpensive table saws such as those in the $99.00 to $300.00 price range that consumers used to create their own homemade "table saws" by turning handsaws upside down and rigging a tabletop on which they could cut wood.  Domeny has opined that these "jerry-rigged" table saws were extremely dangerous and that it was only when Defendants began selling inexpensive table saws that consumers stopped this dangerous practice. He also opined in other cases that if manufacturers such as Defendants are forced through litigation to adopt flesh detection technology, it would effectively

eliminate inexpensive table saws from the marketplace and likely lead consumers to adopt the dangerous practice of constructing their own homemade table saws

## ARGUMENT AND AUTHORITIES

### A.     The argument at issue is not relevant.

Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  FED. R. EVID. 401. This trial is about whether the table saw that injured Plaintiff was defective and unreasonably dangerous. This determination may be made using either the consumer expectation or risk-benefit analysis.  Under either test, issues relating to the potential elimination of inexpensive table saws from the marketplace are not relevant.  Although Defendants are free to argue that flesh detection technology is expensive and would increase the cost of table saws, it is not permitted to take the additional step of arguing that Plaintiffs' claims, or a verdict on Plaintiffs' behalf, could lead to the elimination of inexpensive table saws from the marketplace or make it more likely consumers will use jerry rigged saws.

### B.     The probative value, if any, of the evidence and arguments at issue is substantially outweighed by the danger of unfair prejudice.

Even if the Court were to determine such evidence might have some relevance, the probative value would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.  *See* FED. R. EVID. 403.  Any such assertions would likely lead the jury to conclude that a verdict in Plaintiffs' favor could cause the elimination of inexpensive table saws.  Such arguments are in fact intended to

convince the jury that if they find Defendants liable, then future consumers will be deprived of choice and forced to purchase more expensive table saws as opposed to the $99.00 to $129.00 table saws not currently on the market.

Defendants' attempt to sway jurors based on the potential extraneous impact of their verdict is wholly improper. It is no different than a medical malpractice defendant arguing that malpractice insurance will become unaffordable and doctors will be forced out of business if the jury finds in favor of the plaintiff. It is no different than a defendant arguing that if the jury awards the plaintiff the damages it is seeking, the defendant will be put out of business and its employees will be out of a job. Jurors are required to base their decision solely on the admissible evidence and the applicable law and are not permitted to consider arguments regarding the possible societal effects of their verdict. Under Rule 403, the arguments at issue should be precluded.

**C.      Defendants certainly should not be able to raise any kind of improvised table saw argument because that issue was not disclosed in Mr. Domeny's report.**

Peter Domeny has opined in prior depositions in other cases that before Defendants and other tool companies sold inexpensive table saws such as those in the $99.00 to $300.00 price range that consumers used to create their own homemade "table saws" by turning handsaws upside down and rigging a tabletop on which they could cut wood. Domeny has opined that these "jerry-rigged" table saws were extremely dangerous and that it was only when Defendants began selling inexpensive table saws that consumers stopped this dangerous practice. He has also opined in other cases that if manufacturers such as Defendants are forced through litigation to adopt flesh detection

technology, it will effectively eliminate inexpensive table saws from the marketplace and likely lead consumers to adopt the dangerous practice of constructing their own homemade table saws.  None of these opinions, however, were disclosed in his expert report in this case.  (*See* Expert Report of Peter Domeny, Chapman Decl., Ex. H.).

**D.     Any such opinions by Mr. Domeny would be inadmissible under *Daubert*.**

Even if Mr. Domeny had disclosed such opinions in his report, they would be inadmissible under *Daubert*.   Domeny has not shown himself to be qualified to render opinions regarding the motivations behind consumers' construction of homemade table saws.  He has not shown any relevant or reliable evidence of a causal connection between such construction and the availability or unavailability of inexpensive table saws.  And he has failed to produce any data that would support such opinions.

## CONCLUSION

For all of the reasons set forth above, the Court should enter an order precluding any argument at trial that Plaintiff's legal position and/or a verdict in Plaintiff's favor could lead to the elimination of inexpensive table saws from the marketplace.  As part of that order, the Court should specifically preclude any argument trial regarding the creation by consumers of dangerous improvised table saws due to the unavailability of inexpensive table saws.

Respectfully submitted,

*/s/Eric D. Pearson*
**HEYGOOD, ORR & PEARSON**
Eric D. Pearson
Texas State Bar No. 15690472
2331 W. Northwest Highway
2nd Floor
Dallas, Texas 75220
214-237-9001 Telephone
214-237-9002 Facsimile

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of April, 2015, a copy of the foregoing was served via e-filing:

Walter H. Sweek
Cosgrove Vergeer Kester LLP
888 SW Fifth Avenue, Suite 500
Portland, OR 97204

Mark Mahoney
Schiff Hardin LLP
One Market, Spear Street Tower
Thirty Second Floor
San Francisco, CA 94105

*Counsel for Defendants*

*/s/Eric D. Pearson*
Eric D. Pearson