IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **KRISTOFER EDWARDS**, | Case No. 3:13-cv-01362-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **TECHTRONIC INDUSTRIES NORTH AMERICA, INC., ONE WORLD TECHNOLOGIES, INC., and RYOBI TECHNOLOGIES, INC.**, | |
| Defendants. | |

Jodie Anne Phillips Polich, LAW OFFICES OF JODIE ANNE PHILLIPS POLICH, P.O. Box 220119, Milwaukie, OR 97269; Eric D. Pearson, HEYGOOD, ORR & PEARSON, 2331 West Northwest Highway, Suite 200, Dallas, TX 75220; Richard J. Sullivan, SULLIVAN & SULLIVAN, LLP, 83 Walnut Street, Wellesley, MA 02481. Of Attorneys for Plaintiff.

Walter H. Sweek, COSGRAVE VERGEER KESTER LLP, 888 S.W. Fifth Avenue, Suite 500, Portland, OR 97204; Jeffrey R. Williams and P. Mark Mahoney, SCHIFF HARDIN LLP, One Market Plaza, Spear Street Tower, San Francisco, CA 94105. Of Attorneys for Defendants.

Bruce L. Campbell, P.C. and Michelle Barton Smigel, P.C., MILLER NASH GRAHAM & DUNN LLP, 3400 U.S. Bancorp Tower, 111 S.W. Fifth Avenue, Portland, OR 97204. Of Attorneys for Stephen F. Gass, SawStop, LLC, and SD3, LLC.

**Michael H. Simon, District Judge.**

Plaintiff, Kristofer Edwards, has issued a subpoena to Dr. Stephen F. Gass. Dr. Gass is not a party to this lawsuit. Plaintiff's subpoena requires Dr. Gass to appear as a witness at trial on June 29, 2015, but does not require Dr. Gass to provide any documents or other materials. Dkt. 93-1. Although Plaintiff listed Dr. Gass on Plaintiff's Expert Witness List and provided a summary of Dr. Gass's anticipated expert opinion testimony, Dkt. 50, Dr. Gass is not a retained expert for Plaintiff. In fact, Dr. Gass objects to being required to testify as an expert witness and previously informed the Court and counsel for the parties of his intention to move to quash any trial subpoena that may be served on him. Shortly after receiving Plaintiff's subpoena, Dr. Gass moved, pursuant to Fed. R. Civ. P. 45(d)(3)(B), to quash Plaintiff's subpoena to the event that it requires Dr. Gass either: (1) to disclose trade secret or other confidential information; or (2) to disclose an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party. Dkt. 92. For the following reasons, Dr. Gass's Motion to Quash is GRANTED.

Plaintiff asserts two claims against Defendants. Plaintiff's first claim is for strict products liability; his second claim is for negligence. Plaintiff asserts these claims against three related defendants: Techtronic Industries North America, Inc.; One World Technologies, Inc.; and Ryobi Technologies, Inc. Defendants designed, manufactured, and sold a 2011 model year Ryobi brand portable bench-top table saw, also known as an RTS20 (the "Ryobi Saw"). Plaintiff alleges that the Ryobi Saw was defectively designed by Defendants because it did not incorporate flesh-detection type technology. Flesh-detection technology for use in table saws was invented by Dr. Gass, who is the founder and President of SawStop, LLC ("SawStop"). According to Plaintiff, Defendants' alleged design defect in their Ryobi Saw caused Plaintiff to sustain injuries on August 15, 2011, when his left hand contacted the rotating saw blade. Defendants contend

that the saw was safely designed and that it was Plaintiff's failure to follow the operating instructions for the Ryobi Saw, and not any defect in the design of the saw, that was the cause of Plaintiff's injuries. A nine-day jury trial is scheduled to begin on June 29, 2015.

Dr. Gass's motion to quash is based on Fed. R. Civ. P. 45(d)(3)(B), which provides:

> To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
>
> (i)    disclosing a trade secret or other confidential research, development, or commercial information; or
>
> (ii)   disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

Fed. R. Civ. P. 45(d)(3)(B). The rationale for this rule was explained in the Notes of the 1991 Advisory Committee:

> A growing problem has been the use of subpoenas to compel the giving of evidence and information by unretained experts. Experts are not exempt from the duty to give evidence, even if they cannot be compelled to prepare themselves to give effective testimony, *e.g., Carter-Wallace, Inc. v. Otte*, 474 F.2d 529 (2d Cir. 1972), but compulsion to give evidence may threaten the intellectual property of experts denied the opportunity to bargain for the value of their services. *See generally* Maurer, Compelling the Expert Witness: Fairness and Utility Under the Federal Rules of Civil Procedure, 19 GA. L. REV. 71 (1984); Note, Discovery and Testimony of Unretained Experts, 1987 DUKE L. J. 140. Arguably the compulsion to testify can be regarded as a "taking" of intellectual property. The rule establishes the right of such persons to withhold their expertise, at least unless the party seeking it makes the kind of showing required for a conditional denial of a motion to quash as provided in the final sentence of subparagraph (c)(3)(B) [now, (d)(3)(C)]; that requirement is the same as that necessary to secure work product under Rule 26(b)(3) and gives assurance of reasonable compensation. The Rule thus approves the accommodation of competing interests exemplified in *United States v. Columbia Broadcasting Systems Inc.*, 666 F.2d 364 (9th Cir. 1982). *See also Wright v. Jeep Corporation*, 547 F. Supp. 871 (E.D. Mich. 1982).

> As stated in *Kaufman v. Edelstein*, 539 F.2d 811, 822 (2d Cir. 1976), the district court's discretion in these matters should be informed by "the degree to which the expert is being called because of his knowledge of facts relevant to the case rather than in order to give opinion testimony; the difference between testifying to a previously formed or expressed opinion and forming a new one; the possibility that, for other reasons, the witness is a unique expert; the extent to which the calling party is able to show the unlikelihood that any comparable witness will willingly testify; and the degree to which the witness is able to show that he has been oppressed by having continually to testify. . . ."

Fed. R. Civ. P. 45 advisory committee's note (1991 amendments).

In response to Dr. Gass's motion to quash, Plaintiff argues: (1) Dr. Gass has previously served as an expert witness for other plaintiffs in similar cases and even has drafted a "generic" non-case-specific expert report; (2) Plaintiff has no intention of seeking confidential or proprietary information from Dr. Gass, but only factual information; and (3) Plaintiff has a substantial need for Dr. Gass's testimony that cannot be otherwise met without undue hardship and Plaintiff is willing to compensate Dr. Gass for his time. Dkt. 94.

The Court has considered the fact that Dr. Gass previously has served as an expert witness for other plaintiffs in similar cases and even has prepared a "generic" expert report. He does not, however, at this time want continually to testify as an unretained expert witness. Plaintiff's first argument is not compelling.

Plaintiff also argues that "the majority, if not all, of the questions Plaintiff intends to pose to Dr. Gass are factual questions based on his factual knowledge relating to the development of flesh detection technology and his negotiations with Defendants." Dkt. 94, at 3. Plaintiff cites *Daggett v. Scott*, 2015 WL 3407314 at *2 (D. Colo. May 26, 2015) for the proposition: "Nothing in [Rule 45] protects a fact witness – one whose testimony is based on personal knowledge under federal Rule of Evidence 701 rather than specialized opinions under Federal Rule of Evidence 702 – from compulsory testimony simply because the witness happens also to be an expert."

PAGE 4 – OPINION AND ORDER

There are two flaws in this argument. First, the Court's Civil Trial Management Order required that the parties file a lay witness list that includes "a fair narrative statement summarizing the substance of the testimony expected to be elicited on direct examination." Dkt. 44, at ¶ II(B)(1). Plaintiff timely filed Plaintiff's Lay Witness List, but Dr. Gass was not listed as a *lay* witness and Plaintiff did not provide a summary of Dr. Gass's expected factual testimony. Dkt. 49. Instead, Plaintiff listed Dr. Gass only on Plaintiff's Expert Witness List and summarized in that document the expert opinion testimony that Plaintiff expects to elicit from Dr. Gass. Dkt. 50. The Court has read Plaintiff's summary of Dr. Gass's anticipated expert opinion testimony in Dkt. 50. This testimony is almost entirely expert opinion under Fed. R. Evid. 702. Although such information as Dr. Gass's "negotiations with Defendants" would likely qualify as "factual information," rather than expert opinion, there is nothing disclosed in Plaintiff's witness statement for Dr. Gass that indicates, let alone summarizes, the "factual information" about which Dr. Gass will be asked.

The second flaw is that Dr. Gass is not being called to provide "lay opinion" testimony under Fed. R. Evid. 701. Nothing in the opinions described in Plaintiff's summary of Dr. Gass's anticipated testimony, Dkt. 50, satisfies the three criteria of Rule 701. That rule requires that testimony in the form of lay opinion be: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Any opinion testimony from Dr.Gass that is "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702" would not be helpful to the jury. Thus, Plaintiff's second argument is not persuasive.

Plaintiff's third argument is that Plaintiff has "substantial need" for Dr. Gass's testimony that cannot be otherwise met without undue hardship and Plaintiff is willing to compensate Dr. Gass for his time. Plaintiff, however, fails to make a sufficient showing. Moreover, Plaintiff's statement that "the majority, if not all, of the questions Plaintiff intends to pose to Dr. Gass are factual questions based on his factual knowledge relating to the development of flesh detection technology and his negotiations with Defendants," Dkt. 94, at 3, coupled with the fact that Plaintiff failed to disclose a summary of any such factual testimony in Plaintiff's required pretrial submissions undermines Plaintiff's position. In addition, Plaintiff has known since at least May 4, 2015, that Dr. Gass intended to resist any trial subpoena, yet Plaintiff waited until May 29, 2015, several days after the pretrial conference, to subpoena Dr. Gass for trial. Plaintiff has not made a sufficient showing of "substantial need."

Dr. Gass's Motion to Quash Plaintiff's Subpoena (Dkt. 92) is GRANTED.

IT IS SO ORDERED.

DATED this 8th day of June, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge