IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KRISTOFER EDWARDS,

        Plaintiff,

    v.

TECHTRONIC INDUSTRIES NORTH
AMERICA, INC., ONE WORLD
TECHNOLOGIES, INC., and RYOBI
TECHNOLOGIES, INC.,

        Defendants.

Case No. 3:13-cv-01362-SI

**OPINION AND ORDER ON PRETRIAL
MOTIONS AND OBJECTIONS**

Jodie Anne Phillips Polich, LAW OFFICES OF JODIE ANNE PHILLIPS POLICH, P.O.
Box 220119, Milwaukie, OR 97269; Eric D. Pearson, HEYGOOD, ORR & PEARSON,
2331 West Northwest Highway, Suite 200, Dallas, TX 75220; Richard J. Sullivan, SULLIVAN
& SULLIVAN, LLP, 83 Walnut Street, Wellesley, MA 02481. Of Attorneys for Plaintiff.

Walter H. Sweek, COSGRAVE VERGEER KESTER LLP, 888 S.W. Fifth Avenue, Suite 500,
Portland, OR 97204; Jeffrey R. Williams and P. Mark Mahoney, SCHIFF HARDIN LLP, One
Market Plaza, Spear Street Tower, San Francisco, CA 94105. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiff, Kristofer Edwards, asserts two claims against Defendants. Plaintiff's first claim is for strict products liability; his second claim is for negligence. Plaintiff asserts these claims against three related defendants: Techtronic Industries North America, Inc.; One World Technologies, Inc.; and Ryobi Technologies, Inc. Defendants designed, manufactured, and sold a 2011 model year Ryobi brand portable bench-top table saw, also known as an RTS20 (the "Ryobi Saw").

Plaintiff alleges that the Ryobi Saw was defectively designed by Defendants because it did not incorporate flesh-detection type technology. Flesh-detection technology for use in table saws was invented by Dr. Stephen F. Gass, who is the founder and President of SawStop, LLC ("SawStop"). According to Plaintiff, Defendants' alleged design defect in their Ryobi Saw caused Plaintiff to sustain injuries on August 15, 2011, when his left hand contacted the rotating saw blade. Defendants contend that the saw was safely designed and that it was Plaintiff's failure to follow the operating instructions for the Ryobi Saw, and not any defect in the design of the saw, that was the cause of Plaintiff's injuries.

The parties have filed numerous pretrial motions and objections. The Court held a pretrial conference on May 26, 2015. A nine-day jury trial is scheduled to begin on June 29, 2015.

I.    Time Limitations on Witness Testimony (Live and Video)

The parties requested a nine-day jury trial. If jury selection and opening statements take a full day and final instructions, closing arguments and jury deliberations take a full day (and the Court reserves a second day for continued deliberations), this leaves approximately six full days for trial testimony in order to complete the trial in nine days. During a typical civil jury trial, the Court generally receives approximately 5.5 hours of trial testimony per day. Six days multiplied by 5.5 hours per day results in 33 hours. Thus, each side is allotted half of that total, or 16.5

hours, for all direct, cross, re-direct, and re-cross examinations (measured "chess clock style"), which results in approximately three days of trial testimony per side. After discussing this issue with counsel during the pretrial conference held on May 26, 2015, the Court considers this amount of time to be reasonable. *See Navellier v. Sletten*, 262 F.3d 923, 941 (9th Cir. 2001) ("Trial courts have broad authority to impose reasonable time limits. Such limits are useful to prevent undue delay, waste of time, or needless presentation of cumulative evidence. While trial courts have discretion to expedite the completion of trials, they must not adhere so rigidly to time limits as to sacrifice justice in the name of efficiency.") (internal quotation marks and citations omitted).

## II.    Plaintiff's Itemized Statement of Special Damages

The Court has reviewed Plaintiff's Itemized List of Special Damages, seeking $97,438.20 in past medical expenses and $6,720 in past lost wages. Dkt. 52. Plaintiff calculates his claim for lost wages based on $14 per hour multiplied by 40 hours per week multiplied by 12 weeks. *Id.* Defendants object to Plaintiff's claim for lost wages, arguing that during both a recorded interview and a deposition, Plaintiff explained that he was not consistently working 40 hours per week during the months preceding his accident. Dkt. 63. Defendants did not move for partial summary judgment. The Court OVERRULES Defendants' objection. At trial, Plaintiff may present his evidence of lost wages, to be tested at trial.

## III.    Motions *in Limine*

### A.    Defendants' Motions *in Limine*

Defendants move *in limine* for an Order precluding: (1) testimony of Plaintiff's "non-retained" expert Dr. Stephen F. Gass; (2) testimony of Plaintiff's retained expert Darry Robert Holt; (3) evidence relating to or derived from data and reports of the National Electronic

Injury Surveillance System; (4) evidence of reports of "finger saves"; (5) evidence that Underwriters Laboratories ("UL") may be considering a proposed revision of UL 987 (Seventh Edition) that would mandate the use of flesh-detection technology on all table saws; and (6) evidence of "subsequent" design changes made or anticipated to be made by third parties or Defendants. Dkt. 60. Plaintiff opposes Defendants' motions *in limine*, except as noted below. Dkt. 79.

> 1.     Dr. Stephen F. Gass

In Plaintiff's Expert Witness List (Dkt. 50), Plaintiff listed Dr. Stephen F. Gass as the second of Plaintiff's two expert witnesses on liability issues. Dr. Gass is the founder and President of SawStop and invented flesh-detection technology for table saws. Defendants move *in limine* to exclude the testimony of Dr. Gass primarily on the grounds that he is a "non-retained" expert, under Fed. R. Civ. P. 26(a)(2)(C), who has refused to serve as an expert witness for Plaintiff in this case and who has not yet produced all of the documents Defendants have requested "pertaining to the development of a benchtop table saw that incorporates SawStop technology," notwithstanding the issuance of a subpoena by Defendants on Dr. Gass and his companies.

Dr. Gass's counsel previously informed the parties and the Court that Dr. Gass will not be an expert witness for the Plaintiff and if subpoenaed will challenge any such subpoena. Plaintiff served a subpoena on Dr. Gass, and Dr. Gass moved to quash Plaintiff's subpoena. Dkt. 92. On June 8, 2015, the Court granted Dr. Gass's motion to quash. Dkt. 96. Defendants' first motion *in limine*, therefore, is DENIED AS MOOT.

2.      Darry Robert Holt

Plaintiff listed Darry Robert Holt on Plaintiff's Expert Witness List as a retained expert,

under Fed. R. Civ. 26(a)(2)(B), on liability issues. Dkt. 50. Mr. Holt received his B.S. degree in

mechanical science and also a law degree. Defendants move *in limine* to exclude the testimony

of Mr. Holt primarily on the grounds that Mr. Holt's "proposed testimony is speculative,

irrelevant, and unreliable." Dkt. 60. Defendants argue that Mr. Holt is not a design engineer and

has insufficient technical qualifications. Defendants also challenge Mr. Holt's proposed

testimony that incorporating flesh-detection technology is economically feasible on the grounds

that Mr. Holt has insufficient economic expertise. Plaintiff responds that Mr. Holt is a

mechanical engineer who has more than 35 years of experience investigating accidents and

evaluating the safety of thousands of different products, including table saws. Dkt. 79. Plaintiff

adds that Mr. Holt has spent more than 4,000 hours during the past ten years investigating and

testing flesh-detection technology and its use in table saws and that he has testified on these

issues in five previous federal court trials.

In support of Plaintiff's response to Defendants' motions *in limine*, Plaintiff filed a

declaration from Mr. Holt dated May 12, 2015. Dkt. 81. Defendants object to that declaration "as

an untimely and improper attempt to introduce new expert opinions on the eve of trial." Dkt. 84.

Defendants assert that Mr. Holt's declaration adds "new opinions that were neither included in

his expert report nor disclosed during defendants' August 14, 2014 deposition of Mr. Holt." *Id*.

Defendants add that they "are now unable to depose and cross-examine Mr. Holt regarding these

new opinions before trial." *Id.* Trial, however, is not set to begin until June 29, 2015. The Court

will receive Mr. Holt's new declaration, and, as stated by the Court as the pretrial conference

held on May 26, 2015, Defendants have leave to take an additional deposition of Mr. Holt limited to the new issues raised in his declaration.

Rule 702 of the Federal Rules of Evidence provides that expert opinion evidence is admissible if: (1) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable principles and methods; and (5) the expert has reliably applied the relevant principles and methods to the facts of the case. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014); Fed. R. Evid. 702.

"Under *Daubert*[1] and its progeny, including *Daubert II*,[2] a district court's inquiry into admissibility is a flexible one." *City of Pomona*, 750 F.3d at 1043 (citing *Alaska Rent–A–Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). In evaluating proffered expert testimony, the trial court is "a gatekeeper, not a fact finder." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (citation and quotation marks omitted). "[T]he trial court must assure that the expert testimony both rests on a reliable foundation and is relevant to the task at hand." *Id.* at 564 (internal quotation marks omitted). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Id.* at 565 (citation and quotation marks omitted). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.*

---

[1] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

[2] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311 (9th Cir.1995) ("*Daubert II*'").

at 564 (citation omitted). The judge must "screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *City of Pomona*, 750 F.3d at 1043 (citing *Alaska Rent–A–Car*, 738 F.3d at 969). In short, "[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Id.* at 969–70.

Furthermore, the test of reliability is a flexible one. *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (en banc). The court must assess an expert's reasoning or methodology, using as appropriate criteria such as testability, publication in peer-reviewed literature, known or potential error rate, and general acceptance. *Id*. But these factors are "meant to be helpful, not definitive, and the trial court has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable, based on the particular circumstances of the particular case." *Primiano*, 598 F.3d at 564 (citations and quotation marks omitted). The test "is not the correctness of the expert's conclusions but the soundness of his methodology," and when an expert meets the threshold established by Rule 702, the expert may testify and the fact finder decides how much weight to give that testimony. *Primiano*, 598 F.3d at 564-65. Challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge. *City of Pomona*, 750 F.3d at 1044. "A district court should not make credibility determinations that are reserved for the jury." *Id.*

The Court is satisfied that Mr. Holt is qualified to opine that flesh-detection technology, like the SawStop technology, is effective at preventing injuries and that, had it been incorporated into the "Ryobi Saw" at issue in this case, Plaintiff's injuries would have been reduced. Feasibility, however, has two aspects: technological and economic. Specifically, Mr. Holt is qualified to opine that incorporating flesh-detection technology into the Ryobi Saw at issue was

technologically feasible. To this extent, Defendant's motion *in limine* regarding Mr. Holt is DENIED IN PART.

Mr. Holt, however, may not be qualified to offer an opinion regarding the *economic* feasibility of incorporating flesh-detection technology. He does not appear to have specific experience or training in economics, accounting, business, or finance and does not appear to have performed an economic or accounting analysis. Accordingly, his testimony regarding economic feasibility is tentatively excluded, although Mr. Holt may discuss relevant contextual facts, to the extent that such testimony is based on otherwise admissible evidence and is helpful to the jury. The Court will DEFER any more specific rulings on this issue until Mr. Holt's testimony at trial. To this extent, Defendant's motion *in limine* regarding Mr. Holt is GRANTED IN PART. If Plaintiff desires to present the Court with further qualifications of Mr. Holt concerning his ability to testify as an expert regarding economic feasibility, Plaintiff has leave to do so.

### 3. NEISS

Defendants move *in limine* to exclude evidence of reports and data compiled from the National Electronic Injury Surveillance System ("NEISS") for use by the Consumer Product Safety Commission ("CPSC"). Defendants argue that these reports include multiple levels of hearsay, are not relevant, and that any probative value is substantially outweighed by their prejudicial effect. Defendants add that these reports should not be received as the basis for expert opinion under Fed. R. Evid. 703.

The Court finds that NEISS and CPSC data fall under the public records exception to the rule against hearsay. Fed. R. Evid. 803(8). Further, the relevance and weight to be afforded to such data may be explored on cross-examination. Defendants' motion *in limine* regarding these

reports and data is therefore DENIED. As the district court did, however, in another case involving comparable issues and the same defendants, the Court, upon request by Defendants, will give the jury the following limiting instruction:

> The Plaintiff has offered evidence of other injuries sustained by people using table saws. The Consumer Product Safety Commission ("CPSC") conducts a random sampling of data and extrapolates that sample to make a national estimate of the number of injuries. You are cautioned that this evidence is offered only as evidence of the Defendants' notice or awareness of a potential defect in the table saw that is the subject of this litigation. Such evidence of other injuries should not be considered by you as evidence of the existence of a dangerous condition in the table saw that is the subject in this trial.

*See Anderson v. Techtronic Industries North America, Inc., et al.*, Case No. 3-cv-01571-PGB-TBS (M.D. Fla.) (April 20, 2015) (Dkt. 69 at 2).

> 4.      "Finger Saves"

Defendants move *in limine* to exclude evidence consisting of reports from SawStop customers that an operator of a SawStop saw was able to avoid serious injury because of the proper performance of SawStop's flesh-detection technology. Defendants argue that this information is inadmissible hearsay. Defendants also argue that the probative value of this information is substantially outweighed by its prejudicial effect. Plaintiff does not dispute that reports prepared by SawStop based on comments received from its customers are hearsay. Instead, Plaintiff argues that Plaintiff's expert Mr. Holt should be permitted to discuss these reports as a basis for his opinions regarding the effectiveness of the SawStop technology. Fed. R. Evid. 703 ("But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.")

Plaintiff adds that four other federal courts agree with Plaintiff's proposition. According to Plaintiff:

> Defendants move to strike the real-world evidence of the successful operation of saws equipped with SawStop flesh-detection technology. This motion should be denied. The data is clearly admissible as a basis for Mr. Holt's expert opinions. Notably, this issue has already been considered by three other federal judges, all of whom held that experts should be permitted to rely on the finger save data. (*See* July 15, 2012 Order in *Wielgus v. Ryobi Tehchnologies, Inc.*, No. 08 CV 15797 (N.D. Ill.) ("Wielgus Order") at 12-14, Chapman Decl., Ex. 20; February 4, 2010 Trial Tr. in *Osorio v. One World Technologies, Inc.*, No. 06-10725 (D. Mass.), at 5-6, Chapman Decl., Ex. 2; August 12, 2010 Hearing Tr. in *Ptak v. Black & Decker Corp., et al.*, No. 08 C 6212 (N.D. Ill.) at 82-84, Chapman Decl., Ex. 6.) Moreover, at the recent trial of *Anderson v. Techtronic Industries*, 3-cv-01571-PGB-TBS (M.D. Fla.), Mr. Holt was permitted to discuss the reports as a basis for his opinions regarding the effectiveness of SawStop.

Dkt. 79 at 15-16. This Court agrees with the conclusions reached on this issue by these other federal courts. Defendants' motion *in limine* to exclude reports of "finger saves" is DENIED.

     5.     Potential Revision of UL 987

Defendants move *in limine* to exclude evidence that Underwriters Laboratories ("UL") is currently considering revising UL 987 (Seventh Edition) to require that all table saws incorporate flesh-detection technology. According to Defendants, UL 987 is "the recognized industry standard applicable to the RTS20" and that at the time of Plaintiff's accident, the RTS20 complied with the current version (Seventh Edition) of UL 987. Defendants argue that evidence of a "potential" revision of UL 987 is irrelevant. In response, Plaintiff states that Plaintiff "does not oppose the motion provided that the ruling is mutual and Defendants are also precluded from introducing UL 987 as evidence that the table saw was allegedly not defective." Defendants respond that evidence of the current version of UL 987 is relevant and should be admitted.

Dkt. 89 (Defendants' Supplemental Brief). Plaintiff disagrees. Dkt. 90 (Plaintiff's Response to Defendants' Supplemental Brief).

Both the current version of UL 987 and any potential revision that may be under consideration are excluded for three reasons. First, whether UL 987 will, in fact, be revised to require flesh-detection technology in the future is not currently known. Instead, such a conclusion calls for improper speculation.

Second, UL 987 is a voluntary industry guideline. It is not a federal, state, or municipal statute, rule, ordinance, regulation, code, or standard. Thus, any evidence that the Ryobi Saw at issue complies with UL 987 in its current form would result in unfair prejudice by confusing the issues and misleading the jury, even considering that evidence of compliance with a voluntary industry standard has some, albeit modest, probative value. Fed. R. Evid. 403.

Third, Plaintiff's sole theory for why the Ryobi Saw at issue is defective is because it does not contain flesh-detection technology. UL 987 (Seventh Edition), however, does not address flesh-detection technology. Instead, it relates to the voluntary standard governing the "guard" on the saw. Plaintiff does not allege that there was anything defective with the guard on the Ryobi Saw. Plaintiff argues that attempting to inject UL 987 into this case is "akin to a defendant in a suit alleging a car was defective because it lacked air bags seeking to introduce the fact that the seatbelt of the car complied with industry standards." Dkt. 90, at 1-2. Again, any evidence or argument regarding whether the Ryobi Saw at issue complies with UL 987 in either its current or potentially future form would result in unfair prejudice by confusing the issues and misleading the jury. Fed. R. Evid. 403.

Defendants' motion *in limine* to exclude evidence of any potential revision of UL 987 is GRANTED. Neither party may refer to UL 987.

6.      "Subsequent" Design Changes

Defendants move *in limine* to exclude evidence that the Robert Bosch Tool Corporation ("Bosch") recently announced that it intends to release a table saw with a version of flesh-detection technology in the Fall of 2015. Defendants also seek to exclude evidence of its own post-manufacture but pre-accident efforts to develop a table saw with flesh-detection technology. Defendants argue that any such design changes already made or to be made are irrelevant to the question of whether the table saw at issue was unreasonably dangerous at the time it was manufactured in 2011. Defendants invoke Rules 401, 403, and 407 of the Federal Rules of Evidence.

Fed. R. Evid. 407 does not apply to third-parties, and in this lawsuit Bosch is a third-party. *See Pau v. Yosemite Park & Curry Co.*, 928 F.2d 880, 887-888 (9th Cir. 1991). In addition, Rule 407, which excludes evidence of subsequent remedial measures when offered for certain purposes, only applies to actions taken "subsequent" to the accident or injury at issue. *See Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1343 (5th Cir. 1978). Finally, even subsequent remedial measures undertaken by a defendant after the accident or injury at issue are admissible to prove the "feasibility of precautionary measures," even if not admissible to prove negligence, culpable conduct, or a defect in design. Fed. R. Evid. 407. Defendants' motion *in limine* to exclude evidence of design changes by Bosch or by design changes under consideration by Defendants before Plaintiff's injury is DENIED. Defendants' motion *in limine* to exclude evidence of design changes made or under consideration by *Defendants after* Plaintiff's injury is DEFERRED. If Plaintiff seeks to offer such evidence, it must first give timely notice to Defendants and the Court. The Court will then evaluate the purpose for which such evidence is

offered, any likely prejudicial effect, and whether a limiting instruction would sufficiently cure any such likely prejudicial effect.

B.      Plaintiff's Motions *in Limine*

Plaintiff moves *in limine* for an Order precluding Defendants from: (1) making "monopoly" and "freedom of choice" arguments; (2) offering evidence or making arguments that they were concerned about the possibility of expensive patent infringement litigation being brought against them by Dr. Gass or SawStop; and (3) arguing that a verdict in favor of Plaintiff may lead to the elimination of inexpensive table saws from the marketplace. Dkt. 54. Defendants oppose Plaintiff's motions. Dkt. 58.

1.      "Monopoly" and "Freedom of Choice" Arguments

Plaintiff moves *in limine* to preclude Defendants from arguing that Plaintiff and Dr. Gass are seeking to create a monopoly for SawStop and to "force" consumers to pay for expensive safety technology from a SawStop monopoly. Plaintiff's motion is GRANTED IN PART AND DENIED IN PART. Defendants may not attempt to argue about what may be the motivations of Plaintiff (or SawStop) in this lawsuit. Similarly, Defendants may not argue (or speculate) that the effect of this lawsuit may be to create a monopoly for SawStop. Defendants may, however, argue and present evidence concerning whether incorporating flesh-detection technology in table saws would render such saws prohibitively expensive. Defendants may also present an appropriately narrow "freedom of choice" consumer argument, provided that Defendants do not argue or imply either: (1) that consumers should be allowed to purchase products that are "unreasonably dangerous and defective" without having any recourse under the law when they become injured by such a product; or (2) that the likely result of a verdict for Plaintiff would be the elimination of consumer choice.

2.      Patent Infringement Evidence and Arguments

Plaintiff moves *in limine* to preclude Defendants from arguing that incorporation of flesh-detection technology might expose Defendants to patent litigation from Dr. Gass or SawStop. According to Plaintiff, Defendants have produced no admissible evidence that there is any serious risk of patent liability to Dr. Gass or SawStop and Defendants have produced no infringement opinions from their patent counsel. Instead, argues Plaintiff, Defendants have invoked the attorney-client privilege when asked questions about their potential patent liability to either Dr. Gass or SawStop. Defendants respond by arguing that they "may present evidence that they were concerned about the possibility of very expensive patent litigation" if they had commercialized a table saw with flesh-detection technology. According to Defendants, such testimony is admissible and proper because "it pertains to the feasibility of an alternative design," especially in light of the more than 100 patents held by Dr. Gass and SawStop.

As a theoretical matter, the Court agrees with Defendants concerning the relevance of their concerns about the possibility of expensive patent litigation. It would be unfair, however, to allow Defendants to present evidence or argument about their concerns about potential patent litigation without affording Plaintiff a fair and reasonable opportunity to take discovery on whether such concerns were actually and reasonably held by Defendants. By invoking the attorney-client privilege, which Defendants have a right to do, they prevent Plaintiff from obtaining such discovery. Again, that is Defendants' right. They may not, however, then attempt to take advantage of Plaintiff's ignorance about Defendants' actual beliefs or the reasonableness of those beliefs by offering testimony about a subject that Defendants intentionally have precluded Plaintiff from fully investigating. Accordingly, Plaintiff's motion is GRANTED.

3.      "Inexpensive Table Saw" Arguments

Plaintiff moves *in limine* to preclude Defendants from arguing that a verdict in favor of Plaintiff may lead to the elimination of inexpensive table saws from the marketplace. Plaintiff argues that such an argument is irrelevant to the questions presented in this case. Plaintiff also argues that such an argument should be precluded under Fed. R. Evid. 403. Defendants respond that the practical consequences of Plaintiff's theories of liability are relevant because a jury is expressly permitted to consider the feasibility of a safer alternative design along with its financial costs. Plaintiff also moves to exclude under *Daubert* the opinions of Defendants' expert witness on technological and economic feasibility, Peter Domeny.

Plaintiff's motion *in limine* is GRANTED IN PART AND DENIED IN PART. Defendants may not offer speculation about what might happen in the marketplace if Plaintiff wins this lawsuit. As previously discussed, however, Defendants may argue and present evidence concerning whether incorporating flesh-detection technology in table saws would render such saws prohibitively expensive. Defendants may also present a narrow "freedom of choice" consumer argument. As described above, Defendants may not argue or imply either: (1) that consumers should be allowed to purchase unreasonably dangerous defective products without having any recourse under the law when they become injured by such a product; or (2) that the likely result of a verdict for Plaintiff would be the elimination of consumer choice. Finally, the Court is satisfied that Mr. Domeny is a qualified expert who may discuss both the technological and the economic feasibility of incorporating flesh-detection technology into table saws.

IV.   Trial Exhibits

A.      Plaintiff's Trial Exhibits

The following Plaintiff's Trial Exhibits are PRE-ADMITTED without objection: 15, 19, 27, 44, 51, 55, 56, 57, 58, 59, 60, 72, 73, 157, 169, 189, 199, 216, 220, 255, 256, 309Y, 346, 347, 348, 349, and 350. The Court DEFERS ruling on all other exhibits listed on Plaintiff's Exhibit List. The Court adds that only those exhibits that are both received and actually used during trial will be available to the jury during deliberations.

B.      Defendant's Trial Exhibits

The following Defendants' Trial Exhibits are PRE-ADMITTED without objection: 503, 504, 505, 506, 507, 508, 509, 510, 511, 513, 514, 516, 517, 526, 533, 534 (enlargements are for demonstrative purposes only), 535, 550, 551, 616, 622, 629, 631, 644, 650, 651, 657, 663, 664, 665, and 700. The Court DEFERS ruling on all other exhibits listed on Defendants' Exhibit List. The Court adds that only those exhibits that are both received and actually used during trial will be available to the jury during deliberations.

V.    Deposition Excerpts

According to the parties' Joint Status Report (Dkt. 86), the parties are unable to reach agreement on whether and to what extent the following witnesses should be permitted to testify by deposition transcript in lieu of live testimony at trial: Heather Lawder; Randy Light; William Palmer; and either John Stimitz or Michael Belcher from Underwriters Laboratory.

A.      Heather Lawder

Defendants offer excerpts from the trial testimony of Heather Lawder in the case of *Stollings v. Ryobi Technologies, Inc.*, Case No. 08-cv-04006 (N.D. Ill.). Ms. Lawder is (or was) an employee of Home Depot, which is not a party in the pending action. Plaintiff objects to the

entirety of Ms. Lawder's excerpted trial testimony from the *Stollings* case as inadmissible

hearsay. Plaintiff argues that this testimony does not qualify under the "former testimony"

exception of Fed. R. Evid. 804(b)(1) because Plaintiff (Mr. Edwards) was neither a party nor a

"predecessor in interest" to the plaintiff in the *Stollings* case (Mr. Stollings) and Mr. Edwards did

not have an opportunity to cross-examine this witness at the *Stollings* trial.

 In response, Defendants argue that "the claims and issues presented during the *Stollings*

trial were substantially identical to those at issue here. Moreover, Mr. Stollings was represented

by Richard Sullivan, [one of] the same attorney[s] currently representing Mr. Edwards and Mr.

Sullivan had the same opportunity and similar motives to develop the testimony through cross

examination." Dkt. 85 at 2. Defendants then cite *United States v. Duenas*, 691 F.3d 1070,

1086-91 (9th Cir. 2012), and *United States v. McFall*, 558 F.3d 951, 961-63 (9th Cir. 2009).

 Fed. R. Evid. 804(b)(1)(B) provides that former testimony given at a trial, hearing, or

lawful deposition, whether given during the current proceeding or a different one, is not excluded

by the rule against hearsay if that testimony:

> is now offered against a party who had—or, in a civil case, whose
> predecessor in interest had—an opportunity and similar motive to
> develop it by direct, cross-, or redirect examination.

Fed. R. Evid. 804(b)(1)(B). Before one even gets to the stage of inquiring about opportunities

and similar motives, however, the testimony must be offered against either a party (here,

Mr. Edwards) or, because this is a civil case, a "predecessor in interest" to *that* party (in other

words, a predecessor in interest to Mr. Edwards). Everyone agrees that Mr. Edwards was not a

party in the *Stollings* case. Thus, the relevant threshold question is whether the plaintiff in that

case (Mr. Stollings) is a "predecessor in interest" to Mr. Edwards. If so, the inquiry proceeds to

examine whether that predecessor in interest (Mr. Stollings) had an opportunity and similar

motive to develop the testimony. If, however, Mr. Stollings is not a "predecessor in interest" to Mr. Edwards, the analysis ends.

In both cases cited by Defendants, the party was the *same* in both proceedings, so the inquiry moved directly to the question of similar motives (opportunity not being challenged). In *Duenas*, Officer Smith testified against criminal defendant Ray Duenas (referred to as "Ray" by the Ninth Circuit in this case against two brothers) at a pretrial suppression hearing. Officer Smith then died before Ray Duenas' trial. In the trial against Ray Duenas (and his brother), the district court admitted Officer Smith's suppression hearing testimony under Rule 804(b)(1) as "former testimony," reasoning that *Ray* Duenas had a meaningful opportunity to cross examine Officer Smith at the suppression hearing on the motion brought by Ray but made a tactical decision not to do so. The Ninth Circuit discussed the "similar motive" issue and reversed. Relevant here, the Ninth Circuit stated:

> Thus, the critical question is whether *Ray* had the "opportunity and similar motive" to develop Officer Smith's testimony by direct, cross-, or redirect examination at the suppression hearing as *he* would have had at trial.

*Duenas*, 691 F.3d at 1086 (emphasis added).

Similarly, in *McFall*, a criminal defendant (McFall) argued on appeal that the district court erred in not admitting a transcript of the grand jury testimony of witness Sawyer over the government's objection. At McFall's criminal trial, Sawyer invoked his rights under the Fifth Amendment, and thus was "unavailable." McFall argued that the transcript of Sawyer's grand jury testimony should have been admitted under Rule 804(b)(1). The Ninth Circuit in *McFall* discussed the "similar motive requirement" because there was the same party (the federal government) in both proceedings—the grand jury and the trial. *McFall*, 558 F.3d at 961. Thus, neither *Duenas* nor *McFall* involve a situation where prior testimony from an earlier proceeding

is being offered in a later proceeding against someone who was not a party in the earlier proceeding and where the actual party in the earlier proceeding was not a predecessor in interest to the party in the later proceeding.

Defendants offer no argument or authority for the proposition that Mr. Stollings was a "predecessor in interest" to Mr. Edwards. Instead, Defendants seem to equate "predecessor in interest" with the notion of part of a similar "community of interest." Although some cases and commentators lend support for this approach, it typically has occurred in the context of a private litigant in a later case involving a governmental entity attempting to use someone else's testimony from an earlier case involving a different private litigant against a different governmental entity, but arguably a governmental entity with a "similar motive" to develop the testimony. The Court is unaware of any cases applying Rule 804(b)(1)(B) as Defendants seek to apply it here, and Defendants have not called the Court's attention to any such cases.

In the view of this Court, the better interpretation of the rule equates "predecessor in interest" with a concept closer to "privity," which is a well-known concept in the law of property, contracts, and civil property. *See generally* 5 Christopher B. Mueller and Laird C. Kirkpatrick, FEDERAL EVIDENCE §8:122 ("Former testimony—The 'predecessor-in-interest' provision") (4th ed. 2013). The latter approach is more consistent with the text of Rule 804(b)(1)(B), and in the absence of Supreme Court or Ninth Circuit precedent to the contrary, this Court follows the latter approach. Accordingly, Plaintiff's objection to Heather Lawder's prior testimony is SUSTAINED.

B.     Randy Light

Defendants offer excerpts from the deposition testimony of Randy Light in the case of *Osorio v. One World Tech.*, Case No. 06-10725 (D. Mass.). Mr. Light is (or was) an employee of

PAGE 19 – OPINION AND ORDER ON PRETRIAL MOTIONS AND OBJECTIONS

Home Depot, which is not a party in the pending action. Plaintiff objects to the entirety of

Mr. Light's excerpted deposition testimony from the *Osorio* case as inadmissible hearsay.

Plaintiff argues that this testimony does not qualify under the former testimony exception of Fed.

R. Evid. 804(b)(1) because Plaintiff was neither a party nor a predecessor in interest to the

plaintiff in the *Osorio* case and Plaintiff did not have an opportunity to cross examine this

witness at that deposition. Plaintiff's objection to Randy Light's prior testimony is SUSTAINED

for the reasons discussed above in the context of Heather Lawder's proffered former testimony.

C.      William Palmer

In their Joint Status Report, the parties state that they have been "unable to reach

agreement on whether and to what extent the following witnesses should be permitted to testify

by deposition transcript at trial" and they then list "William Palmer," among others. Dkt. 86.

Defendants, however, did not include any deposition designations for William Palmer in

Defendants' Substantive Evidence Deposition Designations. Dkt. 62. Accordingly, Defendants

may not present any excerpts from any deposition testimony of Mr. Palmer. Defendants,

however, did list Mr. Palmer, an employee of Home Depot, U.S.A., Inc., on Defendants' Lay

Witness List as a "possible witness." Dkt. 68. Plaintiff did not object, and thus Plaintiff has

waived any objection to Defendants calling Mr. Palmer as a live witness at trial. Defendants'

direct examination of Mr. Palmer is limited to what Defendants disclosed in Defendants' Lay

Witness List.

D.      John Stimitz or Michael Belcher

In light of the Court's ruling on Defendants' motion *in limine* number 5 excluding all

testimony relating to Underwriters Laboratory and UL 987, it appears to the Court that neither

John Stimitz or Michael Belcher will be testifying, either live or by deposition transcript. If the

Court's assumption is incorrect, the parties are welcome to bring this issue to the attention of the Court.

VI.    Dr. Gass's Motion to Quash Plaintiff's Subpoena

Plaintiff has issued a subpoena to Dr. Stephen F. Gass that requires him to appear as a witness at trial on June 29, 2015. Dkt. 93-1. Dr. Gass then moved, pursuant to Fed. R. Civ. P. 45(d)(3)(B), to quash Plaintiff's subpoena. Dkt. 92. The Court granted Dr. Gass's motion to quash and stated its reasons in an Opinion and Order dated June 8, 2015. Dkt. 96.

VII.   Plaintiff's Supplemental Motion *in Limine* Regarding Criminal History

The parties have stipulated that Plaintiff was convicted in 2002 of three felonies, Robbery, Assault, and Attempted Kipnapping I, and served an eight-year prison sentence. Dkt. 83. Plaintiff acknowledges that because Plaintiff will be a witness these felony convictions are admissible under Fed. R. Evid. 609 to impeach Plaintiff's character for truthfulness. Plaintiff argues, however, that the specific names or nature of these convictions have little probative value in assessing Plaintiff's truthfulness, other than the fact that his was convicted for three felonies. Thus, the Plaintiff moves *in limine* pursuant to Fed. R. Evid. 403 to exclude evidence of the specific names of the crimes for which Plaintiff was convicted and of the length of Plaintiff's sentence. Dkt. 88. Defendants oppose Plaintiff's motion. Dkt. 91.

Plaintiff's motion is well taken. Although Plaintiff was convicted more than 12 years ago, because his release from confinement was within the past ten years, evidence of Plaintiff's three felony convictions must be received under Fed. R. Evid. 609. The specific names and nature of the crimes and Plaintiff's sentence, however, offer only minimal probative value on the only issue for which they are admissible, namely Plaintiff's character for truthfulness. Thus, limiting the details that can be presented is appropriate under Rule 403. Accordingly, unless Plaintiff at

PAGE 21 – OPINION AND ORDER ON PRETRIAL MOTIONS AND OBJECTIONS

trial opens the door to further inquiry, the Court will exclude any evidence of the names or nature of the specific offenses of Plaintiff's convictions and the length of Plaintiff's sentence. If Plaintiff testifies at trial, Defendants are entitled to impeach Plaintiff's testimony by stating that the parties have stipulated that Plaintiff previously was convicted of three felonies and that a felony is a criminal offense punishable by imprisonment for more than one year. Unless Plaintiff at trial opens the door to further inquiry, any further evidence is excluded because its probative value is substantially outweighed by the danger of unfair prejudice.

VIII.   <u>Voir Dire</u>

The parties have requested that certain voir dire questions be asked by the Court (Dkts. 53 and 65) and have objected to several of the proposed questions requested by the opposing party (Dkts. 66 and 74). The Court has provided the parties with a copy of the Court's tentative voir dire script, which shows which questions the Court intends to ask prospective jurors. Each side will be allowed up to 15 minutes for appropriate follow-up voir dire by counsel.

IX.   <u>Jury Instructions and Verdict Form</u>

The parties have submitted their proposed Jury Instructions (Dkt. 72) and proposed Verdict form (Dkt. 73). These documents also contain the parties' respective objections. The Court has provided the parties with copies of the Court's tentative Preliminary Jury Instructions, Final Jury Instructions, and Verdict form.

/ / /

/ / /

/ / /

/ / /

/ / /

PAGE 22 – OPINION AND ORDER ON PRETRIAL MOTIONS AND OBJECTIONS

**CONCLUSION**

The Court's rulings on the parties' pretrial motions and objections are set forth in this

Opinion and Order.

IT IS SO ORDERED.

DATED this 9th day of June, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge